IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **GRAYSON COTES,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. _7:25-cv-00635-RSB-CRM_ |
| | ) | |
| **ALLEGIS GROUP INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **SERVE**: CORPORATION SERVICE COMPANY | | |
| 100 SHOCK SLIP FLOOR 2 | ) | |
| Richmond, VA, 23219 | | |
| -AND- | ) | |
| | ) | |
| **ALTEC INDUSTRIES INC.,** | ) | |
| | ) | |
| **SERVE**: CAPITOL CORPORATE SERVICES, INC. | | |
| 10 SOUTH JEFFERSON STREET STE 1400, | ) | |
| Roanoke, VA 24011-0000 | ) | |
| | | |
| *Defendants.* | ) | |

## COMPLAINT

Grayson Cotes ("Mr. Cotes" and/or "Plaintiff"), through *pro se* representation, brings this action against Defendant Allegis Group Inc. ("Allegis"), and Defendant Altec Industries Inc . ("Altec") (collectively "Defendants"), under Title VII of the Civil Rights Act of 1964, Va. Code Ann. § 57-1, 42 U.S. Code § 2000e, Virginia's Human Rights Act (Va. Code Ann. § 2.2-3900), Va. Code Ann. § 40.1-27.3, Va. Code Ann. § 40.1-29, Va. Code Ann. § 8.01-413.1, and the common law of Virginia.

## I.    INTRODUCTION

1.       This case involves wage theft, religious discrimination, sex-based discrimination, and retaliation against whistleblower-plaintiff, Mr. Cotes. Plaintiff has evidence that Aerotek—a subsidiary of Allegis Group—illegally withheld wages and tax documents from Mr. Cotes, denied Mr. Cotes equal religious-representation within the workplace, retaliated against Mr. Cotes for reporting religious-based discrimination, took retaliatory action against Mr. Cotes for reporting safety hazards to OSHA, retaliated against Mr. Cotes for reporting wage theft, enabled and encouraged sex-based discrimination to continue against Plaintiff after Mr. Cotes reported being sexually assaulted by Altec Industries' agent, Jason Fore, and that less than twenty-four hours after reporting these concerns to Altec's Electrical Department Supervisor, Maxim Perminov, both companies, *together,* took prompt action to unlawfully terminate Plaintiff's employment.

## II.    JURISDICTION AND VENUE

2.       This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e, Virginia's Human Right Act (Va. Code Ann. § 2.2-3900), Va. Code Ann. § 40.1-27.3, Va. Code Ann. § 40.1-29, Va. Code Ann. § 57-1, Va. Code Ann. § 8.01-413.1, and the common law of Virginia.

3.       By order of 42 U.S. Code § 2000e-5, 28 U.S. Code § 1331, and 28 U.S. Code § 1345, this Court is determined to be the correct venue to hold supplemental jurisdiction.

4.       Although this case involves Virginia law and Federal law, it is essential that we blend these actions into one, and in extension, allow this Court to carry supplemental jurisdiction.

5.      Given that all malpractice and illegal employment activities took place within the Commonwealth of Virginia—and since Plaintiff resides in Roanoke, Virginia and is a resident thereof—this is the correct district to file such complaints. To be clear, no other venue would be viable for the circumstances of this case.

## III.    PARTIES

6.      Plaintiff, Grayson Cotes, is a citizen of the United States of America and—due to Defendants' illegal actions—an unsheltered, resident of the Commonwealth of Virginia

7.      Mr. Cotes is a member of The Satanic Temple, claims Atheism, and while growing up on The Qualla Boundary—one of the few remaining,  federally-recognized, indigenous communities—Mr. Cotes has engaged in sacred, spiritual practices.

8.      Mr. Cotes is a Colombian-American male who worked at Altec's Daleville facility between December 2024 and March 20, 2025, when he was unlawfully terminated for complaining about religious discrimination, Fair Labor Standards Act ("FLSA") violations, Occupational Safety and Health Administration ("OSHA") and Virginia Occupational Safety and Health ("VOSH") hazards, secondary-victimization stemming from Plaintiff's complaint about being sexually assaulted, and asking to have a fair, equal representation of Plaintiff's religious beliefs displayed in the company break room.

9.      Aerotek Corporation is a subsidiary of Allegis Group—both being employment agencies—that provide third-party services to Altec Industries. In Allegis' words, "Aerotek is an operating company within Allegis Group..."

10.     Aerotek, is a corporation with its corporate office located at 7301 Parkway Drive South, 3rd Floor, Hanover, MD, 21076.

11.     Defendant, Allegis Group, is a corporation with its principal office, too, located at 7301 Parkway Drive, Hanover, MD, 21076.

12.     Altec, is an Alabama corporation with its headquarters located at 210 Inverness Center Drive, Birmingham, AL, 35242.

13.     The Altec facility at which Plaintiff worked is located at 325 South Center Drive, Daleville, VA, 24083.

14.     Less than twenty-four hours after Plaintiff brought these concerns to his supervisor at Altec, Maxim Perminov ("Mr. Perminov"), and his Allegis account manager, Hunter Walls ("Mr. Walls"), Altec and Allegis terminated Mr. Cotes, together, on a one-way-call, with no reason(s) as to why.

## IV.     EXHAUSTION OF REMEDIES

15.     On March 20, 2025, Mr. Cotes was terminated from his position as an Electrical Assembler at Altec's facility in Daleville, Virginia, and in extension, from Allegis/ Aerotek as a temp-to-hire employee.

16.     On or about May 1, 2025, Mr. Cotes filed charges with the Equal Employment Opportunity Commission ("EEOC") and Virginia's Office of Civil Rights ("VOCR") alleging that Defendants had discriminated and retaliated against him for reporting religious-based discrimination, sex-based secondary-victimization, FLSA violations,

safety and health concerns, and requesting equal religious representation. These charges were brought within the 300 days allowed, according to federal and state law.

17.     On or about July 21, 2025, Plaintiff received a Notice of Right to Sue, naming Allegis Group as the respondent, from the EEOC, giving Mr. Cotes ninety days to file suit against Allegis, on the basis of the claims alleged in Plaintiff's EEOC Charge.

18.     On or about November 12, 2025, the EEOC granted Mr. Cotes a Notice of Right to Sue, naming Altec Industries the respondent, allowing Plaintiff ninety days to file suit in a federal court.

19.     Mr. Cotes brings this complaint, within the time period that he is allowed to do so.

## V.    LEGAL FRAMEWORK

### A.  Title VII of the Civil Rights Act of 1964

20.     Section 2000e-2 [Section 703],   reads, "It shall be an unlawful employment practice for an employer - (1) to...discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

21.     Section 2000e-3, [Section 704] states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation..."

22.    Depending on the amount of employees, Title VII limits the amount of damages that can be received—capped at $300,000.

**B.  United States Constitution: First & Fourteenth Amendment**

23.    The First Amendment seeks to protect the freedom of religion within American jurisdiction, and forbids any State or the federal government from respecting any specific religion, or places of such religious beliefs and practices, over another—including the absence of any religious identity.

24.    The Fourteenth Amendment guarantees equal protection of the laws to every person, within any and all American jurisdiction.

25.    Unlike Title VII, the Fourteenth Amendment is generally written, inclusive to *all persons*, and not limited by race, religion, etc.

26.    "The inestimable toll of that deprivation on the social, economic, intellectual, and psychological well-being of the individual, and the obstacle it poses to individual achievement, make it most difficult to reconcile the cost or the principle of a status-based denial of…the Equal Protection Clause…" - Supreme Court Justice Brennan delivering the opinion of the Supreme Court during *Plyler v. Doe (1982)*.

27.    Upon delivering the opinion of the Supreme Court, regarding *Tinker v. Des Moines Independent Community School District (1969)*, Supreme Court Justice Fortas made clear to our nation that, "It can hardly be argued that either students or teachers shed their constitutional rights to freedom at the schoolhouse gate." The same can be said, for doors of employment.

6

## C. **Virginia's Human Rights Act (Va. Code Ann. § 2.2-3900)**

28.    § 2.2-3900 reads, "[i]t is the policy of the Commonwealth to: 2. Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of…religion…or…sex…"

29.    § 2.2-3905(B) states, "It is an unlawful discriminatory practice for: 1. An employer to…discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's…religion…[or] sex…"

30.    Whereas Title VII permits limitations on damages, the VHRA does not limit the relief a Plaintiff, like myself, can claim.

## D. **Va. Code Ann. § 57-1: Religious Freedom**

31.    Va. Code. Ann. § 57-1 reads, "Be it enacted by the General Assembly, That no man shall be compelled to frequent or support any religious worship, place or ministry whatsoever, nor shall be enforced, restrained, molested or burthened, in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and that the same shall in no wise diminish, enlarge or affect their civil capacities."

## E. **Va. Code Ann. § 40.1-27.3**

32.    § 40.1-27.3 reads, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding

7

an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: (1)…reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official…(3) [r]efuses to engage in a criminal act that would subject the employee to criminal liability; (4) [r]efuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused at that reason; or (5) [p]rovides information to…any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

33.     § 40.1-27.3(C) reads, "…[t]he court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

## F.  Va. Code Ann. § 40.1-29

34.     Va. Code Ann. § 40.1-29(C) reads, "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization the employee…"

## G.  Respondeat Superior

8

35.    "*Respondeat superior* is a legal doctrine…that holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of employment or agency." — *Cornell's Legal Information Institute.*

36.    "Accordingly, we conclude that the district court erred in dismissing VanBuren's claim against Dr. Grubb based on its determination that 'were the Virginia Supreme Court to directly address this issue, it would find that wrongful discharge claims by an employee are cognizable only against an employer and not against supervisors or co-employees in their individual capacity.' VannBuren v. Va. Highlands Orthopedic Spine Ctr., LLC, 728 F. Supp. 2d 791, 794 (W.D. Va. 2010)." —*VanBuren v. Grubb, Court of Appeals, 4th Circuit 2013*.

## H. Virginia's Common Law "*Bowman* Claim"

37.    Although the legalized discrimination disguised as "at-will employment" is legal, in Virginia, any Title VII and/or Constitutional claim(s) must hold authority within a court of law.

38.    Article One Section Three of Virginia's State Constitution, affirms that all government entities, and laws in extension of such government, must operate—*only*—within the interest of the persons residing in the Commonwealth's jurisdiction. If any of the laws cited by Plaintiff are not in the full interest, and/or in accordance to the liberty of persons residing in the Commonwealth of Virginia, Mr. Cotes—as a Virginia resident—has a right to challenge such laws, and an indubitable right to abolish such infringement on the public's inalienable rights. Given that all laws of Virginia are instituted to protect

9

the persons of the Commonwealth, all laws cited by Plaintiff are enough to assert a *Bowman* claim.

39.    Mr. Cotes holds evidence that he is inclusive within the protected class(es), under Title VII.

## VI.    STATEMENT OF FACTS

40.    Mr. Cotes began working for Altec Industries ("Altec") in December 2024, and in extension, Aerotek/Allegis.

41.    Mr. Cotes only missed one day during his time employed at Altec, and never received any write-ups or disciplinary action.

42.    As an Electrical Assembler, Mr. Cotes assembled medium duty trucks—some being used by federal and state governments.

43.    Specifically, Mr. Cotes performed his duties underneath the rear-end of said trucks.

44.    Defendant, Jason Fore ("Mr. Fore"), an Altec employee, was Mr. Cotes' trainer, during the first month or so of Plaintiff's employment.

45.    Mr. Cotes worked second shift, which typically ended around 12:30AM.

46.    At approximately 12:15AM on February 13, 2025, while Mr. Cotes was—vulnerably—under a truck doing his job, Jason Fore, a middle-aged, male, Altec employee, groped Mr. Cotes' inner right thigh and butt without warning.

10

47.     Mr. Cotes – stunned – pulled away from the unwanted contact, and sent a clear signal that this conduct was unprofessional and highly unwelcome.

48.     Instead of respecting Mr. Cotes' bodily integrity, Jason Fore proceeded to assault Plaintiff, again!

49.     Upon Mr. Fore sexually-assaulting Mr. Cotes for the second time, Grayson Cotes pushed his way out from under the truck, and walked away to escape this demeaning and clearly unwanted sexual contact.

50.     Plaintiff, immediately, walked outside to the break-area and contacted his supervisor, Maxim Perminov, via text.

51.     Because this assault took place near the end of Mr. Cotes' shift, he did not encounter his assailant again.

52.     Although it seemed as if management at Altec had properly dealt with the situation, shortly after making the report, an intense wave of discrimination started rolling Mr. Cotes' way, from other coworkers.

53.     Two peers within the Electrical Department, Cody Campbell ("Mr. Campbell") and James Hiner ("Mr. Hiner"), started making threats to Mr. Cotes and harassing him, because Plaintiff reported the sexual assault.

54.     For the next month or so, until Mr. Cotes' termination, Mr. Hiner and Mr. Campbell threatened to rape Mr. Cotes—along with many other derogatory comments.

55.    Mr. Hiner, for example, threatened to call Immigration Services on Mr. Cotes, yet Mr. Cotes is an American Citizen, born in Atlanta, Georgia.

56.    Because night shift does not have an HR representative present, Mr. Cotes took these concerns to his floor lead, Josh, yet nothing was done.

57.    On Wednesday, March 19, 2025, Mr. Cotes notified his Allegis account manager, Mr. Walls, that he was unable to access his paystubs and tax documents via Allegis' employee portal.

58.    After this, Allegis' management repeatedly denied Mr. Cotes access to paper-copy paystubs—all, but one, still have not been received by Mr. Cotes.

59.    Mr. Cotes stated that he was concerned the issue would not be taken seriously, and sent accessible links to Virginia Law—affirming his rights under Virginia jurisdiction.

60.    Mr. Walls proceeded to side-arm the problem, and refused to provide Mr. Cotes with Mr. Cotes' personal tax documents.

61.    Around 4PM on March 19, 2025, Mr. Cotes walked into his work station to find his toolbox ripped apart, tools stolen, the padlock completely damaged, and a makeshift, religious cross reading, "JESUS SAVES".

62.    Later that night, around 12AM, Plaintiff was approached and verbally harassed by a supervisor from a completely different area, but Mr. Cotes proceeded to do his job as normal.

63.    Not even thirty minutes later, Mr. Cotes reported the harassment to Mr. Perminov.

64.    Mr. Perminov left the floor to "investigate," and returned to tell Mr. Cotes that he "didn't believe the supervisor harassed Mr. Cotes."

65.    When Mr. Cotes asked why his concerns were not taken seriously, Mr. Perminov merely laughed.

66.    Mr. Cotes, at that moment, proceeded to report all of his concerns to Mr. Perminov, including but not limited to: OSHA and VOSH hazards, religious-based discrimination and harassment from coworkers, FLSA violations, as well as requesting equal, First Amendment Protected, religious representation.

67.    Once Mr. Cotes completed engaging in government, protected activities, Mr, Perminov only responded with, "Tie your shoes!"

68.    On March 20, 2025, at about 1PM, three hours before Mr. Cotes' next scheduled shift, Plaintiff received a call.

69.    During said telephone call, Nick (Last Name Unknown), from Allegis, and a Human Resources representative from Altec, notified Mr. Cotes that he was being terminated and to not return to Altec's property.

70.    No reason was given to Mr. Cotes as to why he was being terminated so abruptly, nor did Allegis make any efforts to place Plaintiff at another work facility.

71.    On March 26, 2025, Mr. Cotes received his final paycheck from Altec and Allegis, but it was less than what should have been paid for Plaintiff's time worked, so Mr. Cotes reached out to Mr. Perminov, from Altec, and both Nick and Mr. Walls from Allegis.

13

72.    Mr. Perminov replied to Mr. Cotes stating, "...Our work week ends on a Thursday, but our pay period ends on a Sunday (2nd shift gets paid Mon-Sun). Since you did not work Thursday or Sunday, you only got paid for 3 days that you worked last week, which are Monday, Tuesday, and Wednesday..."

73.    Neither Nick or Hunter Walls, on the other hand, replied with any feasible explanation, yet continued to victim-blame and gaslight Mr. Cotes—redirecting Plaintiff to the employee portal, even though Mr. Cotes had been clear about his issues with said portal.

74.    On or about March 31, 2025, Plaintiff received a piece of physical mail from Allegis, and it happened to be one, out of the many, paystubs Mr. Cotes previously requested—proving that Allegis had full ability to send paper-copy tax documents, yet they chose not to follow Virginia law.

75.    Mr. Cotes noticed that this specific paystub was for the final week he worked, and this, thankfully, validated Plaintiffs concerns regarding the wage theft.

76.    Not only did the paystub validate that Mr. Cotes should have been paid for Sunday, March 16, 2025, through Saturday, March 22, 2025–contradicting what Plaintiff had been told by Mr. Perminov—but it showed that, instead of the $21.25 per hour Mr. Cotes was promised for his time worked, Plaintiff was only getting paid $21.02 per hour.

77.    Shortly after, Mr. Cotes contacted the account manager at Allegis, Mr. Walls, to explain the details of Plaintiff's findings.

14

78.     Neither Defendants provided Mr. Cotes with any reasonable explanation as to why they thought it was appropriate to commit wage theft against Plaintiff—and potentially hundreds of other victims.

79.     Since being terminated, Mr. Cotes has lost not only his source of income, but also his sense of personal dignity, his two senior cats, a place to sleep at night, a home with running water, a fridge to store perishables, the respect from his family members, the home Plaintiff wished to rent, a place to find peace and privacy, and finally, Mr. Cotes lost time dedicating himself to these companies and recovering from the consequences of doing what is right. Mr. Cotes has lost a part of his life that can never possibly be recovered—he is forced to move forward and live with the unfair, disparate treatment that his former employers subjected him to.

80.     He is now afraid that he must keep his mouth shut if he is again subjected to unwanted sexual contact and advances, or that he must suppress his emotions and constitutional rights, in order to thrive in America's pro-business economy.

81.     Months after the illegal termination, Mr. Cotes is still receiving counseling to deal with the emotions he has experienced from these horror-filled circumstances.

82.     Mr. Cotes – the victim – has paid a heavy price for honestly reporting what happened to him, insisting that conduct be recognized for the unfathomable, and unconstitutional, invasion of his bodily integrity, freedom of conscience, and privacy it represents.

## VII.    CAUSES OF ACTION

**COUNT I**

**Defendants Committed Religious and Sex-Based Discrimination, Against Plaintiff—
Violating Title VII of the Civil Rights Act of 1964 and 42 U.S. Code § 2000e-2**

83.    Paragraphs/lines 1-82 are hereby re-alleged and embodied in this Count I;

84.    Under Title VII, Mr. Cotes was an employee, and Defendants (Allegis and Altec) were Mr. Cotes' employer;

85.    Section 2000e-2 [Section 703],    reads, "It shall be an unlawful employment practice for an employer - (1) to...discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...religion...[or] sex..."

86.    Allegis and Altec's management and human resources officials were fully aware of such harassment, condoned it, and unlawfully dismissed his claims;

87.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including but not limited to medical, dental, and vision coverage), and a continuous loss of wages; Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

88.    42 U.S. Code § 2000e-5 entitles Mr. Cotes to recover compensatory and punitive damages, attorney fees, costs, as well as interest.

89.    42 U.S. Code § 2000e-5(g)(1) reads, "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such

16

unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay …or any other equitable relief as the court deems appropriate…"

## COUNT II
### Defendants Committed Religious and Sex-Based Discrimination, Against Plaintiff—Violating Virginia's Human Rights Act

90.    Paragraphs/lines 1-89 are hereby re-alleged and embodied in this Count II;

91.    Under Virginia's Human Rights Act, Mr. Cotes was an employee, and Defendants (Allegis and Altec) were Mr. Cotes' employer;

92.    § 2.2-3900 reads, "[i]t is the policy of the Commonwealth to: 2. Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of…religion…or…sex…"

93.    § 2.2-3905(B) states, "It is an unlawful discriminatory practice for: 1. An employer to…discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's…religion…[or] sex…"

94.    Defendants' management team and human resources officials were fully aware of such harassment, condoned it, and unlawfully dismissed Mr. Cotes' claims;

95.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including, but not limited to, medical, dental, and vision coverage), and a

17

continuous loss of wages. Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

96.     § 2.2-3908(B) reads, "If the court or jury finds that an unlawful discrimination has occurred, the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

## COUNT III

### Defendants Terminated Plaintiff, for Reporting Religious and Sex-Based Discrimination—Violating Title VII of the Civil Rights Act of 1964 and 42 U.S. Code § 2000e-2

97.     Paragraphs/lines 1-96 are hereby re-alleged and embodied in this Count III;

98.     Under Title VII, Mr. Cotes was an employee, and Defendants (Allegis and Altec) were Mr. Cotes' employer;

99.     Mr. Cotes reported the sex-based and religious-based discrimination, to Defendants' management and human resources officials.

100.    Following Mr. Cotes' reporting of such harassment and discrimination, Defendants unlawfully terminated Plaintiff.

101.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including, but not limited to, medical, dental, and vision coverage), and a

18

continuous loss of wages. Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

102.    42 U.S. Code § 2000e-5 entitles Mr. Cotes to recover compensatory and punitive damages, attorney fees, costs, as well as interest.

103.    42 U.S. Code § 2000e-5(g)(1) reads, "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay …or any other equitable relief as the court deems appropriate…"

## COUNT IV

### Defendants Terminated Plaintiff, for Reporting Religious and Sex-Based Discrimination, as well as OSHA and FLSA Violations—Violating VA Code Ann. § 40.1-27.3

104.    Paragraphs/lines 1-105 are hereby re-alleged and embodied in this Count IV;

105.    § 40.1-27.3(A) reads, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: (1)…reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official…(3) [r]efuses to engage in a criminal act that would subject the employee to criminal liability; (4) [r]efuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused at that

19

reason; or (5) [p]rovides information to…any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

106.    Mr. Cotes reported the sex-based and religious-based discrimination, to Defendants' management and human resources officials.

107.    Mr. Cotes made reports to OSHA/VOSH, regarding Defendants' violations of state and federal law (as well as governmental safety regulations).

108.    Following Mr. Cotes' reporting of such harassment, discrimination, FLSA violations, and OSHA/VOSH violations, Defendants unlawfully terminated Plaintiff.

109.    § 40.1-27.3(C) reads, "…[t]he court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

VIII.    **URGING FOR RELIEF**

Wherefore, Plaintiff, Grayson Cotes, urges this Court for an Order:

a.    Declaring that Allegis Group and Altec Industries discriminated against Plaintiff on the basis of his religious beliefs;

b.    Declaring that Allegis and Altec discriminated against Plaintiff on the basis of his sex;

c.    Declaring that Allegis and Altec retaliated against Plaintiff for complaining about OSHA violations;

20

d.      Declaring that Allegis and Altec retaliated against Plaintiff for submitting an OSHA complaint;

e.      Declaring that Allegis and Altec retaliated against Plaintiff for complaining about FLSA violations;

f.      Declaring that Allegis and Altec retaliated against Plaintiff for complaining about wage theftt;

g.      Declaring that Allegis and Altec retaliated against Plaintiff for complaining about religious-based discrimination and harassment;

h.      Declaring that Allegis and Altec retaliated against Plaintiff for requesting equal, religious representation;

i.      Requiring Allegis Group and Altec Industries—together and with liability—to pay Plaintiff, Grayson Cotes, compensatory damages for all physical and emotional injuries, emotional distress, time lost, and embarrassment that Mr. Cotes has suffered as a result of both companies' malpractice, plus punitive damages of $350,000;

j.      Requiring Allegis and Altec to pay Plaintiff compensatory damages for all lost wages, bonuses, benefits, and promotions Plaintiff lost, and continues to lose as a result of Defendant's unlawful termination.

k.      Requiring Allegis and Altec to pay Plaintiff punitive damages in an amount of $350,000, for illegally discriminating against Mr. Cotes on the basis of his sex and religion;

l.      Requiring Allegis and Altec to pay Plaintiff punitive damages in an amount of $350,000 for criminally terminating Plaintiff;

21

m.      That Plaintiff be awarded all attorney fees and costs.

n.      That Plaintiff be awarded post-judgment interest;

o.      And that the Court award any other relief that is justifiable.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

January 23, 2026

GRAYSON COTES

By:   */s/ Grayson T. Cotes*
      *Plaintiff*

Grayson T. Cotes
Roanoke, Virginia 24015
Mobile: (828) 200-5434
Email: graysoncotes@gmail.com

*Plaintiff*