**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 21, 2026

LAURA A. AUSTIN, CLERK
BY: _/s/ T. Costa_
DEPUTY CLERK

|  |  |  |
|---|---|---|
| GRAYSON COTES | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:25cv635 |
| | ) | |
| v. | ) | <u>REPORT & RECOMMENDATION</u> |
| | ) | |
| ALLEGIS GROUP, INC.,[1] | ) | By: C. Kailani Memmer |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

This matter is before the court on the motion of plaintiff Grayson Cotes ("Plaintiff"), proceeding *pro se*, for leave to amend his complaint. (ECF No. 27.) Defendant Allegis Group, Inc. ("Allegis"), by counsel, opposed the motion to amend. (ECF No. 33.) Also pending is a motion to dismiss the original complaint (ECF No. 9), and plaintiff's motion for contempt (ECF No. 28). Although a hearing was held on the motion to dismiss, I find that a hearing is not necessary on the motion to amend or the motion for contempt as a hearing will not assist in the decision-making process.

For the reasons discussed below, I recommend granting in part and denying in part Plaintiff's motion for leave to amend, denying as moot the motion to dismiss, and denying Plaintiff's motion for contempt.[2]

---

[1] As consented to by Allegis at the hearing on the motion to dismiss, the correct legal entity is Allegis Group, Inc., not Allegis Group LLC. Accordingly, Allegis Group, Inc. will be substituted for Allegis Group LLC on the docket. Allegis Group Inc. is directed to refile its disclosure statement pursuant to Fed. R. Civ. P. 7.1.

[2] The proposed amended complaint moots the motion to dismiss by attempting to cure the alleged defects in the original complaint. *See Venable v. Pritzker*, No. GLR-13-1867, 2014 WL 2452705, at *5 (D. Md. May 30, 2014) ("When a plaintiff files an amended complaint, it generally moots any pending motion to dismiss because the original complaint is superseded.") *aff'd*, 610 Fed. Appx. 341 (4th Cir. 2015).

## I.    Background

On September 9, 2025, Plaintiff, proceeding *pro se*, filed a complaint against Allegis alleging claims for religious and sex discrimination and harassment, as well as retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Virginia Human Rights Act ("VHRA"), Virginia's Whistleblower Protection Law ("VWPL"), and state common law. (ECF No. 1.) Allegis moved to dismiss the complaint claiming Plaintiff failed to include a necessary party under Fed. R. Civ. P. 19 and failed to state a claim for relief under Fed. R. Civ. P. 12(b)(6). (ECF No. 10.) Shortly after the hearing on the motion to dismiss, Plaintiff moved for leave to amend his complaint to add a new defendant, Altec Industries Inc. ("Altec"), as a joint employer; to limit his asserted claims to discrimination and retaliation in violation of Title VII, the VHRA, and the VWPL; and to clarify facts regarding Allegis as an employer. (*See generally* ECF No. 27-1.)

## II.    Alleged Facts in Proposed Amended Complaint[3]

Plaintiff, Grayson Cotes, is a Columbian-American male who is a member of The Satanic Temple, claims Atheism, and grew up on The Qualla Boundary, a federally-recognized, indigenous community. (*Id.* at 3.)

Plaintiff began working for Altec at its Daleville location as an Electrical Assembler in December 2024. (*Id.*) Plaintiff asserts his employment with Altec also created an employment relationship with defendants Allegis and Aerotek as a "temp-to-hire" employee. (*Id.* at 4.) Plaintiff claims he never missed a day of work and did not receive any write-ups or disciplinary action during his employment (*Id.* at 10.) Plaintiff's position involved assembling medium duty trucks which some were used by federal and state

---

[3] At this stage, the court assumes the facts alleged in the proposed amended complaint are true. *See Carey v. Throwe*, 957 F.3d 468, 484 (4th Cir. 2020).

governments. (*Id.*) During assembly, Plaintiff would be under the rear-end of the trucks. (*Id.*) Plaintiff worked second shift, which typically ended around 12:30am (*Id.*)

Jason Fore, an Altec employee, was Plaintiff's trainer during his first month or so of employment. (*Id.*) On February 13, 2025, around 12:15am, Plaintiff alleges Mr. Fore groped Plaintiff's inner right thigh and buttocks while Plaintiff was vulnerable and underneath a truck. (*Id.*) Plaintiff was stunned and pulled away from the unwanted contact sending a clear signal that Mr. Fore's conduct was unprofessional and highly unwelcome. (*Id.* at 11.) Plaintiff claims Mr. Fore then "proceeded to assault [him] again!" (*Id.*) Plaintiff then pulled out from underneath the truck and walked away to escape Mr. Fore. (*Id.*) Plaintiff immediately walked outside to the break area and contacted his supervisor, Maxim Perminov, an Altec employee, by text message. (*Id.*) Plaintiff did not see Mr. Fore again that day as it was nearing the end of his shift. (*Id.*)

Plaintiff believed management at Altec properly dealt with his complaint but, shortly after making the report, Plaintiff began to experience "an intense wave of discrimination" from other coworkers. (*Id.*) For example, two coworkers in the Electrical Department, Cody Campbell and James Hiner, started "making threats to [Plaintiff] and harassing him, because Plaintiff reported the sexual assault." (*Id.*) Over the next month, Mr. Campell and Mr. Hiner threatened to rape Plaintiff and made "many other derogatory comments." (*Id.*) Mr. Hiner also threatened to call Immigration Services on Plaintiff although Plaintiff is an American citizen. (*Id.* at 12.) Because night shift did not have a human resources representative present, Plaintiff took his concerns to his floor lead, Josh[4], yet Plaintiff claims nothing was done. (*Id.*)

---

[4] Plaintiff does not identify Josh's last name.

On March 19, 2025, Plaintiff advised his account manager at Allegis, Mr. Walls, that he was unable to access his paystubs and tax documents via Allegis's employee portal. (*Id.*) After this report, Allegis repeatedly denied Plaintiff's requests for paper-copy paystubs. (*Id.*) Plaintiff has received only one paper-copy paystub. (*Id.*) Plaintiff asserts he was concerned the issue would not be taken seriously and sent links to Virginia law explaining his rights. (*Id.*) Mr. Walls continued to refuse Plaintiff's requests for copies of his personal tax documents. (*Id.*)

On that same day around 4:00pm, Plaintiff walked into his workstation to find his toolbox ripped apart, tools stolen, the padlock completely damaged, and a makeshift, religious cross reading, "JESUS SAVES." (*Id.*) Later that night, around 12:00am, Plaintiff was approached and "verbally harassed" by a supervisor from a different area, but Plaintiff continued to do his job as normal. (*Id.*) Less than thirty minutes later Plaintiff reported "the harassment" to Mr. Perminov. (*Id.*) Mr. Perminov left the floor to investigate and returned informing Plaintiff he "didn't believe the supervisor harassed [Plaintiff]." (*Id.* at 13.) Plaintiff questioned Mr. Perminov as to why he was not taking his concerns seriously to which Mr. Perminov laughed. (*Id.*) Plaintiff then responded by reporting "all of his concerns" to Mr. Perminov, "including but not limited to OSHA and VOSH hazards, religious-based discrimination and harassment from coworkers, FLSA violations, as well as requesting equal, First Amendment protected, religious representation." (*Id.*) Mr. Perminov's only response was, "[t]ie your shoes!" (*Id.* at 11.) Plaintiff also claims he reported concerns to his Allegis account manager, Mr. Walls. (*Id.* at 4.)

On March 20, 2025, at about 1:00pm, three hours before Plaintiff's next scheduled shift, Plaintiff received a call from Nick[5] with Allegis and a human resources representative from Altec notifying Plaintiff he was being terminated and to not return to Altec's property. (*Id.*) Plaintiff was not provided with a reason for his termination. (*Id.*) Following his termination, Allegis did not make any efforts to place Plaintiff at another work facility. (*Id.*)

On March 26, 2025, Plaintiff received his final paycheck from Altec and Allegis, but it did not account for all of his time worked during his final work period. (*Id.*) Plaintiff contacted Mr. Perminov, with Altec, and Nick and Mr. Walls with Allegis. (*Id.*) Mr. Perminov responded stating, "Our work week ends on a Thursday, but our pay period ends on a Sunday (2nd shift gets paid Mon-Sun). Since you did not work Thursday or Sunday, you only got paid for 3 days that you worked last week, which are Monday, Tuesday, and Wednesday." (*Id.* at 14.) Nick and Mr. Walls "continued to victim-blame and gaslight" Plaintiff and redirected Plaintiff to the employee portal even after Plaintiff had "been clear about his issues" with the employee portal. (*Id.*)

On or about March 31, 2025, Plaintiff received a copy of his final paystub from Allegis. (*Id.*) Plaintiff alleges such paystub validates his wage theft concerns and violations of Virginia law regarding paper-copy tax documents. (*Id.*) Plaintiff's final paystub reflected he should have been paid for Sunday, March 16, 2025, through Saturday, March 22, 2025, and that he was paid only $21.02 per hour when he was promised an hourly rate of $21.25 per hour. (*Id.*) Soon thereafter, Plaintiff contacted the account manager at

---

[5] Plaintiff claims he does not know Nick's last name.

Allegis, Mr. Walls, to explain the wage issues. (*Id.*) Plaintiff was not provided a reasonable explanation from Allegis or Altec regarding the alleged wage theft issues. (*Id.* at 15.)

On or about May 1, 2025, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) and Virginia's Office of Civil Rights (VOCR) alleging Allegis and Altec discriminated and retaliated against him for reporting religious-based discrimination, sex-based discrimination, FLSA violations, safety and health concerns, and requesting equal religious representation. (*Id.* at 4–5.) On or about July 21, 2025, Plaintiff received a Notice of Right to Sue from the EEOC regarding Plaintiff's charge filed against Allegis. (*Id.* at 5.) Plaintiff filed this lawsuit on September 9, 2025—before the 90-day deadline. (*Id.*) Plaintiff received a Notice of Right to Sue from the EEOC regarding Altec on November 12, 2025. (*Id.*) Plaintiff seeks to amend his complaint to include Altec as a defendant and to clarify his allegations against Allegis. (*Id.*)

Since his termination, Plaintiff alleges he lost his only source of income, his personal dignity, his two senior cats, his home, and respect from his family members. (*Id.* at 15.) Plaintiff claims he fears future reprisal for speaking up against discrimination and harassment and goes to counseling "to deal with the emotions he has experienced" due the unlawful treatment and termination from his employment. (*Id.*)

Plaintiff's proposed amended complaint narrows his claims to religious and sex-based discrimination and retaliation under Title VII and the VHRA, and a whistleblower retaliation claim under the VWPL. (ECF No. 27-1 at 15–20.)

### III.   Motion for Leave to Amend under Fed. R. Civ. P. 15(a)

Once the defendant files a responsive pleading, the plaintiff may amend his complaint only by leave of the court or by written consent of the defendant. Fed. R. Civ. P. 15(a)(2). Leave to amend "shall be freely given when justice so requires." *Id.* "Leave to

6

amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Here, Allegis opposes granting leave to amend on the grounds of futility, arguing that Plaintiff's proposed amended complaint fails to state a claim against Allegis.

Leave to amend would be futile when the amended complaint could not survive a motion to dismiss for failure to state a claim. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Still, leave to amend should only be denied for futility "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, while the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "While courts must liberally construe *pro se* complaints, such liberal construction is not without limits, and a *pro se* plaintiff still must allege facts that state a cause of action." *Karnes v. Midland Credit Mgmt.*, No. 7:24-CV-00335, 2026 WL 1103453, at *2 (W.D. Va. Apr. 23, 2026) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

"In the context of a Title VII case, an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss." *Bing v. Brivo*

7

*Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). But, the factual allegations must "raise a right to relief above the speculative level." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted). Plaintiffs meet this burden when they "allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584-85 (4th Cir. 2015).

### IV.    Failure to Include Aerotek as a Necessary Party under Fed. R. Civ. P. 19(a)

A complaint may be dismissed under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Unlike with a Rule 12(b)(6) motion, where the general rule is that evidence extrinsic to the operative complaint cannot be considered, a district court ruling on a Rule 12(b)(7) motion may consider materials beyond the pleadings and make factual findings based on them." *Peterson v. Harrah's NC Casino Co., LLC*, 169 F.4th 520, 524 (4th Cir. 2026) (citation modified) (citing *5C Wright & Miller's Federal Practice & Procedure* § 1359 & n.25 (3d ed. 1998) (updated Nov. 2025)). When considering a motion under Rule 19, "a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kavablian*, 948 F.3d 214, 218 (4th Cir. 2020). Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among the existing parties" or

> that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . or leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)–(B).

The Fourth Circuit has clarified that "[d]ismissal of a case [for nonjoinder] is a drastic remedy . . . which should be employed only sparingly." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000). But dismissal is "required" if the nonjoined party "is both necessary **and** indispensable." *Gunvor SA*, 948 F.3d at 219 (emphasis added) (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014)). The determination "must be made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Id.* (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)). A party seeking a Rule 19 dismissal bears the burden of showing "that the person who was not joined is needed for a just adjudication." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

Allegis cites *Peterson v. Harrah's NC Casino, LLC*, 1:23-cv-36-MOC, 2023 WL 8103163 (W.D.N.C. Nov. 21, 2023), in support of its argument that the case should be dismissed due to Plaintiff's failure to include Aerotek as a defendant. (*See* ECF No. 33 at 5.) But following the briefing on the instant motion, the Fourth Circuit reversed and remanded *Peterson* concluding that the district court abused its discretion in dismissing the case based on its finding that the plaintiff failed to include a party—which the district court had found was the plaintiff's "true employer"—was "necessary" under Fed. R. Civ. P. 19(a). *Peterson v. Harrah's NC Casino Co., LLC*, 169 F.4th 520, 521 (4th Cir. 2026). Based on the Fourth Circuit's decision in *Peterson*, and for the reasons discussed below, I find that Allegis failed to meet its burden to show that Aerotek is a necessary party under Fed. R. Civ. P. 19(a).

Allegis claims Plaintiff's claims cannot proceed because he failed to include Aerotek as a named defendant. (ECF No. 33 at 5.) In support of this argument, Allegis– similar to the defendant in *Peterson*–asserts Aerotek was Plaintiff's "true employer." (*See id.*) But Allegis mainly supports its argument with speculative assertions rather than providing evidence, such as a declaration from a representative of Allegis, Altec, or Aerotek, clarifying the employment relationship(s) (or lack thereof) between Plaintiff and the three entities. As noted above, the court can make factual findings but must have a sufficient basis to do so. The only material relied on by Allegis is an earning statement issued by Aerotek to Plaintiff that is attached to Plaintiff's proposed amended complaint. (ECF No. 27-2.)

But even if the court were to determine that Aerotek was Plaintiff's employer, such factual determination would not resolve whether Aerotek is a necessary party. *Peterson*, 169 F.4th at 525. Under the circumstances as pled in Plaintiff's proposed amended complaint, the court must also consider whether the *named* defendants are Plaintiff's employers. Indeed, Title VII, the VHRA, and VWPL allow for the possibility of joint employers. *See infra* n.9. There is no evidence before this court to make a finding that Allegis and Altec are not Plaintiff's employers. *Peterson*, 169 F.4th at 526 (noting need to find non-defendant employer had exclusive authority to hire, fire, or control plaintiff or that other named-defendant lacked authority to do so when determining whether a party is necessary under Fed. R. Civ. P. 19(a)). And no evidence shows that Aerotek was the only entity (or even an entity) that could be ordered to reinstate Plaintiff to his job or that its presence is necessary to award Plaintiff monetary damages. *Id.*

As such, I cannot find that the court is unable to "accord complete relief among existing parties" without Aerotek. Fed. R. Civ. P. 19(a)(1)(A). To find otherwise with the

record before this court would be a result based "on speculative assertions and unsupported assumptions." *See Peterson*, 169 F.4th at 527. Allegis had the burden to prove that Aerotek is a necessary party to this lawsuit, and it failed to do so.[6] Accordingly, I do not find that Plaintiff's proposed amended complaint is futile based on its failure to include Aerotek as a defendant.

## V.    Failure to Exhaust Administrative Remedies Against Allegis

Allegis also claims Plaintiff's motion to amend should be denied because he failed to exhaust his administrative remedies by not naming Allegis as a respondent in his EEOC charges. (ECF No. 33 at 5–7.) Plaintiff essentially claims Allegis and Aerotek are one and the same based on a parent-subsidiary relationship and, thus, he has exhausted his administrative remedies against Allegis. (*See* ECF No. 34.)[7]

"Rule 12(b)(6) dismissal may be appropriate where a plaintiff fails to exhaust administrative remedies." *Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 545 (W.D. Va. 2021) (citing *Stewart v. Iancu*, 912 F.3d 693, 701–02 (4th Cir. 2019)). Generally, "an aggrieved employee may sue only those persons or entities named as respondents in his administrative charge." *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F. Supp. 1495, 1498 (E.D. Va. 1996) (citing 42 U.S.C. § 2000e-5(f)(1) (authoring suit "against the respondent named in the [administrative] charge")). "Construed strictly, however, this requirement could present a virtually insurmountable barrier for Title VII claimants, many of whom file administrative charges without the assistance of counsel.

---

[6] It would be remiss not to mention that Allegis can raise a Rule 19 objection later in this litigation allowing the court to revisit the issue on a more complete record. *Peterson*, 169 F.4th at 527 (citing Fed. R. Civ. P. 12(h)(2)).

[7] Plaintiff's name-calling of defendant's counsel will not be tolerated moving forward. (*See* ECF No. 34) (calling defendant's counsel "delusional" and a "liar"). Both parties may advocate their positions but must do so in a respectful manner. Further name-calling may result in sanctions.

Recognizing this, courts have construed this requirement liberally in favor of *pro se* Title VII claimants." *Id.*

In this vein, courts have recognized an exception where there is "substantial identity" between the defendant and the party named in the charge. *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981), *cert. denied*, 459 U.S. 923 (1982) ("[W]here there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [the statute] . . . ."). When determining whether there is a substantial identity between the two parties, courts have considered the following factors:

> (1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that his relationship with the complainant is to be through the named party.

*Ross v. Franklin Cnty. Dep't of Soc. Servs.*, 186 F. Supp. 3d 526, 531 (W.D. Va. 2016) (quoting *Stafford v. Radford Cmty. Hosp., Inc.*, 908 F. Supp. 1369, 1373 (W.D. Va. 1995) (Wilson, J.), *aff'd*, 120 F.3d 262 (4th Cir. 1997)).

A preliminary issue for the court to address is whether it can consider the exhibits attached to Allegis's motion. Generally, extrinsic evidence may not be considered at this stage unless "it was integral to and explicitly relied on in the complaint and if the plaintiff does not challenge its authenticity." *Carter*, 529 F. Supp. 3d at 545 (citation modified) (quoting *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004)).

Allegis attaches Plaintiff's EEOC charge identifying Aerotek as Plaintiff's employer and an activity log from the EEOC. (ECF Nos. 33-1, 33-2.) Plaintiff filed the Notice of Right to Sue related to his EEOC charge identifying Aerotek as Plaintiff's employer. (ECF No. 6.) Courts regularly take judicial notice of EEOC charges and decisions, including right to sue notices, in employment discrimination cases. *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 418 (D. Md. 2024); *Davis v. Navy Fed. Credit Union*, No. 1:11CV01282 JCC/TCB, 2012 WL 73233, at *3 (E.D. Va. Jan. 10, 2012), *aff'd*, 474 F. App'x 398 (4th Cir. 2012). However, courts have reached different conclusions on whether it is appropriate to take judicial notice of an EEOC activity log. *See Aletum v. Wesco Distrib., Inc.*, No. 23-CV-494-PX, 2023 WL 8235159, at *1 (D. Md. Nov. 28, 2023) (finding judicial notice of EEOC charge, notice, and activity log appropriate because the documents were public records and were necessary to decide issues like exhaustion of administrative remedies); *Townsend v. Aptar, Inc.*, No. 1:23-cv-1690-MLB-CMS, 2024 WL 3314985, at *4 (N.D. Ga. Feb. 14, 2024), *report and recommendation adopted*, No. 1:23-cv-1690-MLB, 2024 WL 3314984 (N.D. Ga. May 30, 2024), *aff'd*, No. 24-12130, 2025 WL 325561 (11th Cir. Jan. 29, 2025) (taking judicial notice of EEOC email including statements identifying the date the notice of right to sue was received by the plaintiff); *Carrigan v. Archdiocese of Milwaukee*, No. 22-cv-1084-PP, 2023 WL 6810073, at *4 (E.D. Wis. Oct. 16, 2023) (where parties disputed the date that the plaintiff was notified of the notice of right to sue, declining to take judicial notice of EEOC activity log in part because the EEOC's recordkeeping practices, "like those of any large organization, are by their very nature not free of error"); *Painadath v. Lattanzio*, No. CV 22-3604, 2024 WL 1836500, at *3 (E.D. Pa. Apr. 26, 2024) (declining to take judicial notice of EEOC activity log at the motion to dismiss stage "because considering the activity log would require the

Court to make certain assumptions or inferences about what the various timestamps, acronyms, and terminology represent").

Here, Allegis relies upon the EEOC activity log to show what is *not* included—EEOC contact with an Allegis representative. (*See* ECF No. 33 at 7 n.3.) Under these circumstances, I do not find it appropriate for the court to take judicial notice of the EEOC activity log at this stage as the reason it is provided is "subject to reasonable dispute." *See* Fed. R. Evid. 201(b) (stating a court may take judicial notice of a fact "that is not subject to reasonable dispute," meaning that it: (1) "is generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."). Similar to the reasoning in *Carrigan*, I find that the EEOC's recordkeeping practices, like any other large organization, may not be "free of error" and may not be all-inclusive in terms of the EEOC's contact with the parties during the investigation. *Carrigan*, 2023 WL 6810073, at *4. As such, I will not consider the EEOC activity log.

As to the first factor, I find that Plaintiff could not reasonably determine the distinction between Aerotek and Allegis at the time of filing his EEOC charge. To date, it appears Plaintiff is still unsure about which company was his true employer or if all three entities—Altec, Aerotek, and Allegis—are his joint employers. First, Plaintiff asserts Altec, Aerotek, and Allegis are all his joint employers. (ECF No. 27-1 at 10.) During the hearing on the motion to dismiss, counsel for Allegis claimed Aerotek is not a subsidiary of Allegis. (ECF No. 32 at 7.)[8] Causing further confusion, the EEOC lists both Allegis and Aerotek in

---

[8] Plaintiff attaches to his proposed amended complaint a 2023 memorandum opinion from the United States District Court for the District of Maryland noting Aerotek was a subsidiary of Allegis. (ECF No. 27-2 at 1.) As this fact is in dispute, the court may not take judicial notice of the corporate relationship between Allegis and Aerotek for the purpose that Plaintiff offers it here. *See Corbitt v. Baltimore City Police Dep't*, 675 F. Supp. 3d 578, 586 (D. Md. 2023) (quoting *Hughes v. Freightliner, LLC*, No. 7:04CV00309,

its Notice of Right to Sue. (ECF No. 6 at 2). With this confusion and without discovery, the court cannot expect Plaintiff, proceeding *pro se*, "to understand the detailed factual background of a corporate structure that has numerous subsidiaries or holding companies." *Cobbs v. First Transit Co.*, No. 6:16-CV-00015, 2016 WL 7336562, at *3 (W.D. Va. Dec. 16, 2016) (citing *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 430 (E.D. Pa. 2007)) ("Where courts have addressed the liability of a parent corporation in the context of employment discrimination, most have declined to dismiss the corporate parent at the Rule 12(b)(6) stage. This is so because the requisite inquiry is fact-driven, and prior to discovery there is insufficient evidence in the record to determine whether the parent company is liable."). It appears Plaintiff is seeking to understand the corporate relationship between Aerotek and Allegis based on the allegations in the proposed amended complaint, but there is obviously some confusion. As a result, the first factor weighs in Plaintiff's favor.

Plaintiff's proposed amended complaint provides some factual support for the second and third factors. Plaintiff asserts the Notice of Right to Sue named Allegis as the "respondent." (ECF No. 27-1 at 5.) In review of the Notice of Right to Sue, Allegis is included in the copy line alongside Aerotek which plausibly suggests a shared interest in resolving the employment claims at issue in Plaintiff's EEOC charge. (*See* ECF No. 6 at 2.) Although Allegis asserts that Allegis never received any communication from the EEOC regarding Plaintiff's charge, such statement lacks support. Without more, the court is hesitant to find that Allegis was not involved in, or at least aware of, the EEOC charge

---

2006 WL 1842997, at *1 (W.D. Va. June 29, 2006) ("Although the Court may take judicial notice of the proceedings of another court, it may not take judicial notice of another court's findings of fact for the truth asserted therein because such facts are usually disputed."). Further, even if Aerotek was a subsidiary of Allegis in 2023, it does not mean that the corporate relationship remained intact at the time of Plaintiff's employment starting in December 2024 through March 2025.

or that it suffered prejudice from its lack of involvement. *Cf. Hoffman v. Inova Health Care Services*, 169 F.4th 207, 218–19 (4th Cir. 2026) (affirming determination that represented plaintiffs failed to exhaust their administrative remedies when the alleged joint employer was not named in the EEOC charge <u>and</u> was also not sent the right-to-sue notice).

Additionally, in construing the proposed amended complaint in the light most favorable to Plaintiff, Plaintiff alleges that Allegis and Aerotek share similar interests and are operated through some form of common management and control. *See Cobbs*, 2016 WL 7336562, at *4. For example, Plaintiff alleges Aerotek is a subsidiary of Allegis noting "Aerotek is an operating company within Allegis Group." (ECF No. 27-1 at 2–3.) Plaintiff also claims that Allegis and Aerotek both provide third-party employment services to Altec and were jointly his employer when he worked at Altec's Daleville location. (*See id.* at 3, 10.) Although such allegations are fairly sparse, Aerotek and Allegis, at least at this stage of the litigation and under the circumstances surrounding Plaintiff's employment, appear to have similar interests. Lastly, as Plaintiff and Allegis failed to address the last factor, the court will not find it weighs in favor of either party.

Accordingly, viewing the proposed amended complaint in the light most favorable to Plaintiff, I do not find that Plaintiff's proposed amended complaint is futile due to Plaintiff's failure to include Allegis as a named respondent in his EEOC charge.

## VI.    Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

Finally, Allegis argues that Plaintiff's motion should be denied on futility grounds because Plaintiff's proposed amended complaint fails to state a claim for relief. (ECF No. 33 at 7–11.) Plaintiff asserts Allegis and Altec were his joint employers and they both discriminated and retaliated against him in violation of Title VII, the VHRA, and the

16

VWPL. (*See generally* ECF No. 27-1.)[9] Allegis's sole argument is that Plaintiff failed to allege sufficient facts to establish that Allegis (as opposed to Altec) can be held liable for any alleged discriminatory or retaliatory actions under Title VII, the VHRA, or the VWPL. (ECF No. 33 at 7.)

Allegis claims that Plaintiff's proposed amended complaint is futile because it fails to include "a single factual allegation that Allegis was aware of any alleged concerns about discrimination prior to the end of his assignment" and "is devoid of any facts from which it could be inferred that Plaintiff reported any discriminatory and/or retaliatory conduct to Allegis during his assignment." (*Id.* at 9.) Allegis asserts that Plaintiff was required to allege facts that show Allegis "participated in or 'knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control.'" (*Id.* at 7) (quoting *Crump v. United States Dep't of Navy*, No. 2:13-cv-707, 2016 WL 901262, at *2 (E.D. Va. Mar. 3, 2016)).

Although joint employer liability is recognized under Title VII, the VHRA, and the VWPL, the Fourth Circuit has yet to address the extent to which the liability of one joint employer renders the other liable. However, in the seminal case recognizing joint employer liability under Title VII, the Fourth Circuit cited other cases which adopted the joint employer doctrine and did not impute liability from one joint employer to the other. *Butler v. Drive Automotive Industries of Am. Inc.*, 793 F.3d 404, 408–09 (4th Cir. 2015) (citing *Torres-Negron v. Merk & Co.*, 488 F.3d 34, 40 n. 6 (1st Cir. 2007) ("Thus, a finding

---

[9] Joint employer liability is recognized under Title VII, the VHRA, and the VWPL. *See Butler v. Drive Auto. Indus. Of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) ("multiple entities may simultaneously be considered employers for the purposes of Title VII"); *Hoffman*, 169 F.4th at 214–18 (applying the same joint employment doctrine to Title VII and VHRA claims); *Freitas v. Weatherby Locums, Inc.*, No. 3:25-CV-747, 2025 WL 3634080, at *3 (E.D. Va. Dec. 15, 2025) (citing *Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 195, 906 S.E.3d 128, 138 (2024)) (recognizing joint employer liability for claims asserted under the VWPL).

that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions as [plaintiff] would have us hold."); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 933, 938 (D.S.C. 1997) ("Though Grimes and Columbia Staffing … may each be individually liable as Williams' employer, they are not liable for one another's acts under agency principles," and "when an employee claims discrimination against two joint employers, she must show that [each] defendant knew or should have known of the discriminatory conduct and that it failed to take those corrective measures within its control." (internal quotation omitted)))*; see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229 (5th Cir. 2015) (noting that "[a] staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control").

Additionally, courts within the Fourth Circuit have held that not all actions by one employer or its employees are vicariously attributable to another employer. *See Isernia v. Danville Reg'l Med. Ctr.*, LLC, No. 4:22-CV-00022, 2024 WL 4697681, at *10 (W.D. Va. Nov. 6, 2024) ("Though joint, employers can take independent action such that they are independently liable."); *Kinnett v. Key W + Sotera Def. Sols.*, No. 5:18-CV-110, 2019 WL 4018347, at *5 (W.D. Va. Aug. 26, 2019), *aff'd sub nom. Kinnett v. Sotera Def. Sols., Inc.*, 798 F. App'x 765 (4th Cir. 2020) (noting "the fact that two entities exercised control over one employee does not necessarily render one company liable for the acts of the other's employees"); *Lee v. Mattis*, Civ. Act. No. PX 17-2836, 2018 WL 3439261, at *35 (D. Md. July 17, 2018) (collecting cases for the proposition that "joint employer liability does not by itself implicate vicarious liability" and "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for

18

their own actions, not for each other's actions") (citation modified). But "[c]ourts have generally denied dispositive motions where it is clear that [a] staffing agency knew or should have known about the discrimination before or at the time of the termination." *Brief-McGurrin v. Cisco Sys., Inc.*, No. 1:18CV131, 2019 WL 1332357, at *3 (M.D.N.C. Mar. 25, 2019) (citing cases).

Here, Plaintiff claims Allegis and Altec were his joint employers. (*See* ECF No. 27-1 at ¶¶ 84, 91, 98.)[10] In Plaintiff's proposed amended complaint, he includes allegations that he reported complaints of religious and sex-based discrimination and harassment to his supervisors at Altec. (*See* ECF No. 27-1 at ¶¶ 50, 56, 66.) Plaintiff claims he notified his account manager at Allegis of his "concerns," but the only non-conclusory allegations related to Allegis include Plaintiff's complaints regarding his paystubs and tax documents and his complaints regarding potential wage theft from his last paycheck. (*See* ECF No. 27-1 at ¶¶ 57–60, 69–71, 73–78.) And, based on the above standard, Plaintiff's allegation that Allegis and Altec jointly terminated him is not enough to infer that Allegis was aware of or should have known about Plaintiff's complaints made to Altec. *See Isernia*, 2024 WL 4697681, at *10 (noting allegations of joint employment "does not necessarily mean that all parties are alleged to have committed misconduct *or* that they necessarily acted in concert" (emphasis in original)).

---

[10] Plaintiff does not allege that Allegis is liable under the "integrated employer" doctrine or some other theory directly attributing the conduct of Altec's employees to Allegis. *See Butler*, 793 F.3d at 408 n.3; *William,* 988 F. Supp. at 936. There does not appear to be any question that Allegis and Altec are separate entities. That said, it appears there could be an argument that Allegis and Aerotek are integrated employers. *See Bittle-Lindsey v. Seegars Fence Co., Inc.*, No. 21-1044, 2022 WL 1566770, at *3 (4th Cir. May 18, 2022) (unpublished) (noting the integrated employer doctrine requires a court to examine four factors: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control."). As recommended below, I suggest granting leave to amend to permit Plaintiff to file a second amended complaint, in part, if he wants to assert claims against Aerotek.

As such, I find that Plaintiff's allegations are sufficient to satisfy a claim under the VWPL against Allegis as Plaintiff asserts he made wage-related complaints, including sending copies of the applicable Virginia laws, to an Allegis representative, *see Workman v. LHC Grp., Inc.*, No. 1:23-cv-48, 2024 WL 3572305, at *3 (W.D. Va. July 29, 2024) (noting to state a claim under the VWPL, a plaintiff must plausibly allege that "[he] made a good faith report of a federal or state violation to a supervisor"), but there are not sufficient allegations to show that Allegis, as compared to Altec, knew or should have known of the alleged religious and sex-based discrimination and harassment, or Plaintiff's complaints related thereto, to satisfy discrimination and retaliation claims under Title VII and the VHRA against Allegis. *See Brief-McGurrin*, 2019 WL 1332357, at *3.

## VII.   Motion for Contempt

Plaintiff requests the court hold Allegis and its counsel, Ashley Jones, in contempt pursuant to 18 U.S.C. §§ 1001, 1621, and 1623; Va. Code § 18.2-434; and under the common law of Virginia. (ECF No. 28.) Plaintiff's basis for his request is that he claims Ms. Jones was untruthful during the hearing on the motion to dismiss when she stated Aerotek is not a subsidiary of Allegis. (*Id.* at 2.) As discussed *supra*, Plaintiff claims Aerotek is a subsidiary of Allegis citing to an opinion issued by the United States District Court for the District of Maryland in 2023. (*Id.*)

In review of the motion and Allegis's response thereto, I find no basis for holding Allegis and its counsel in contempt. Plaintiff appears to seek criminal contempt based upon his reliance on multiple criminal statutes and his request for a jury trial on the issue. (*See* ECF No. 28 at 1–3.) [11] However, "to the extent [Plaintiff] is asking for criminal

---

[11] Even if Plaintiff requested Allegis and its counsel be held in civil contempt, I find that Plaintiff wholly failed to plead any of the four elements necessary to satisfy civil contempt. *See DeSimone v. VSL Pharm., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (noting a party moving for civil contempt must establish

investigations or criminal charges, he has no right to pursue such relief." *Jamison v. Clarke*, No. 7:18-CV-00504, 2020 WL 618838, at *9 (W.D. Va. Feb. 10, 2020) ("It is well established . . . that private citizens can neither bring a direct criminal action against another person nor petition the federal courts to compel the criminal prosecution of another person."). Even if he could pursue criminal contempt against a civil litigant and its counsel, I do not find the circumstances here warrant a finding of criminal contempt under 18 U.S.C. § 401. *See O'Reilly v. Tsottles*, No. GLR-18-3622, 2021 WL 424415, at *5 (D. Md. Feb. 8, 2021) (noting a District Court may impose criminal contempt for, *inter alia*, "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice") (quoting 18 U.S.C. § 401).

The corporate relationship between Aerotek and Allegis remains a factual dispute at this stage of the litigation. And, as noted above, the court is not at liberty to take judicial notice of the District of Maryland opinion finding Aerotek to be a subsidiary of Allegis in 2023. *See supra* fn. 8. The court understands Plaintiff is proceeding *pro se* and is zealously advocating his position in this case. But further frivolous motions of this sort will not be tolerated and may even result in sanctions.

Accordingly, I recommend Plaintiff's motion for contempt be denied.

## VIII.  Conclusion

Accordingly, based upon the above reasons, I **RECOMMEND** granting in part and denying in part Plaintiff's motion for leave to amend, and accepting Plaintiff's

---

four elements by clear and convincing evidence: "(1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result."). As Plaintiff's basis for seeking contempt against Allegis and its counsel is an alleged false statement made by Allegis's counsel during a hearing, such actions are not related to a "valid decree" issued by this court.

21

proposed amended complaint only with respect to Count 4, violation of Virginia Code § 40.1-27.3, against Allegis, and all counts against Altec, and denying as moot the motion to dismiss. I **RECOMMEND** granting Plaintiff 14 days to file a motion for leave to file a second amended complaint, along with a proposed second amended complaint, in the event that he wishes to pursue Counts 1–3 against Allegis or any claims against Aerotek. I **RECOMMEND** denying Plaintiff's motion for contempt.

### Notice

The Clerk is directed to transmit the record in this case to the presiding District Judge and to provide copies of this Report and Recommendation to counsel of record and any unrepresented parties.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: May 21, 2026

C. Kailani Memmer
United States Magistrate Judge

22